UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY T. HOXWORTH,

     Plaintiff,

v.

JEREMY A. ERARD, et al.,

     Defendants.

_____/

Case No. 1:26-cv-626

Hon. Hala Y. Jarbou

## **OPINION**

Plaintiff Jeffrey T. Hoxworth brings this lawsuit against his former employer, SDI Consulting, LLC; one of its members, JAE Consulting LLC; and JAE's owner, Jeremy Erard. Hoxworth raises claims under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461, the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219, and state law, alleging that Defendants failed to transfer contributions to his 401(k) account, failed to timely pay his wages, failed to pay him overtime, and retaliated against him when he complained about these issues. Defendants jointly move to compel arbitration of all claims or, in the alternative, to dismiss certain claims for lack of subject matter jurisdiction and failure to state a claim (ECF No. 8).

The Court first addresses Defendant's jurisdictional argument, and finds that Hoxworth has standing to sue. Next, it finds that Hoxworth's claims against JAE and Erard, but not his claims against SDI, must be arbitrated. Finally, it concludes that Hoxworth has stated a claim against SDI for retaliation under ERISA. Accordingly, the Court will compel arbitration of Hoxworth's claims against JAE and Erard and stay those claims pending arbitration. Additionally, because Hoxworth's claims against SDI are intertwined with those against JAE and Erard, the Court will stay those claims as well.

# I. BACKGROUND

Hoxworth was an employee of SDI from 2003 until 2026.  (Compl. ¶ 28, ECF No. 1.)  He was simultaneously a member of SDI, and owned a one-third interest in the company.  JAE is also a member of SDI.  (SDI Membership, ECF No. 12, PageID.167.)  Erard is the owner of JAE and the managing member of SDI.  (Compl. ¶ 3.)  On October 1, 2018, Hoxworth signed a Redemption Agreement with SDI.  (Redemption Agreement, ECF No. 10.)  In that agreement, he sold his stake in SDI back to the company and received a smaller non-voting stake.  (*Id*, PageID.51.)  As part of his compensation for the sale, SDI signed a new Employment Agreement with him.  (*Id.*, PageID.52; Employment Agreement, ECF No. 10-2.)  In addition, the Redemption Agreement stated that in order to provide Hoxworth non-voting stock, the members of SDI would execute a new Operating Agreement.  (Redemption Agreement, PageID.51.)  That Operating Agreement was executed on the same day as the Redemption and Employment Agreements and signed by SDI's three members—Hoxworth, JAE, and Jon J. Gauthier.  (Operating Agreement, ECF No. 12.)

Resolution of the present motion centers on the following arbitration clause in the Operating Agreement:

> Except as provided in Section 14.5 (Specific Performance), all disputes arising under this Agreement or among the Members as to matters involving the Company shall be submitted to arbitration to be administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules (including the Emergency Interim Relief Procedures).

(*Id.* at 20.)  The Redemption Agreement has no arbitration clause, and provides that "[v]enue shall be proper in any state or federal court in Kent County, Michigan."  (Redemption Agreement, PageID.54.)  The Employment Agreement also has no arbitration clause, and states that "[v]enue shall be proper in Grand Rapids, Michigan."  (Employment Agreement 5.)

Defendants' present motion also challenges whether Hoxworth has stated a claim for retaliation under ERISA.  As an employee of SDI, Hoxworth participated in the company's 401(k)

2

plan. (*See* Compl. ¶¶ 16, 25.) Hoxworth alleges that SDI failed to transfer to the plan funds that it withheld from his wages. (*Id.* ¶ 34.) On February 10, 2026, Hoxworth sent a letter to SDI raising issues regarding his 401(k) account and his pay. (*Id.* ¶ 44.) He stated in the letter that he was resigning from his position, effective April 11, 2026. (*Id.* ¶ 45.) On February 11, SDI placed Hoxworth on administrative leave, and on February 18, it terminated him. (*Id.* ¶¶ 46, 48.) SDI sent a letter justifying the termination based on various issues with his performance that it had never previously raised. (*See id.* ¶¶ 48–49.) Hoxworth argues that SDI terminated him in retaliation for his complaint letter.

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

Article III of the Constitution grants federal courts the authority "to decide 'Cases' or 'Controversies' between litigants." *Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 536 (6th Cir. 2021) (quoting U.S. Const. art. III, § 2). If a plaintiff lacks standing to sue, then a case or controversy does not exist, and the court lacks jurisdiction. *See Murray v. U.S. Dep't of Treasury*, 681 F.3d 744, 748 (6th Cir. 2012). "The party invoking federal jurisdiction bears the burden of establishing" standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). To establish standing, a plaintiff must "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Murray*, 681 F.3d at 748 (quoting *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 598 (2007)). Because standing is a jurisdictional issue, it "must be addressed as a threshold matter." *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 405 (6th Cir. 2019).

The standard for evaluating a motion to dismiss under Rule 12(b)(1) depends on the nature of the "attack" on subject matter jurisdiction. A "facial attack" on subject matter jurisdiction "merely questions the sufficiency of the [complaint]." *Ohio Nat'l Life Ins. Co. v. United States*,

922 F.2d 320, 325 (6th Cir. 1990).  The Court accepts the plaintiff's well-pleaded allegations as true and asks whether subject matter jurisdiction exists based on the complaint.  *Id.*  No presumption of truth applies in a "factual attack" on subject matter jurisdiction.  *Id.*  Factual attacks challenge the existence of jurisdiction based on facts outside the pleadings.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  Because Defendants rely only on the complaint and matters of public record, the Court treats their attack as facial.  *See Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (court addressing sufficiency of the complaint under Rule 12(b)(6) may consider matters of public record); *Hague v. Kent County*, No. 1:24-cv-9, 2024 WL 4116459, at *3 (W.D. Mich. Sept. 9, 2024) ("Facial attacks are reviewed under the same standard as applied to a Rule 12(b)(6) motion . . . .").

### B. Rule 12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim if it does not "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id.* at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  When considering a motion to dismiss under Rule 12(b)(6), courts "construe the complaint in the light most favorable

4

to the plaintiff, accepting all well-pleaded factual allegations as true." *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017).

### C. Motion to Compel

The Federal Arbitration Act (FAA) establishes a policy favoring the enforcement of "arbitration agreements on an equal footing with other contracts." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010).  Section 3 of the Act directs courts to stay litigation of any "issue referable to arbitration" upon motion by one of the parties.  9 U.S.C. § 3.  Before compelling arbitration, a court must determine "whether there is a valid contract to arbitrate between the parties." *Adelstein v. Walmart Inc.*, 728 F. Supp. 3d 762, 767 (N.D. Ohio 2024) (citing *Bratt Enters., Inc. v. Noble Int'l Ltd.*, 338 F.3d 609, 612 (6th Cir. 2003)).  If so, the court generally must determine whether "the parties' dispute falls within the arbitration agreement's scope." *Id.*  But an arbitration contract may provide that the arbitrator decides whether a dispute is arbitrable, and the Court must enforce such a delegation provision even "if the argument that the arbitration agreement applies to the particular dispute is 'wholly groundless.'" *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019).

### III. ANALYSIS

Defendants raise three arguments in their motion: (1) Hoxworth lacks standing to bring his ERISA claims, (2) Hoxworth's claims are subject to arbitration, and (3) Hoxworth has failed to state a retaliation claim.  The Court finds that (1) Hoxworth has standing, (2) Hoxworth's claims against JAE and Erard, but not those against SDI, are subject to arbitration, and (3) Hoxworth has stated a retaliation claim against SDI.

### A. Standing

As an initial matter, Defendants contend that the Court lacks jurisdiction because Hoxworth does not have Article III standing to bring his ERISA claims.  The Court must address this issue

5

first because it cannot compel arbitration of claims that it lacks subject matter jurisdiction over. *Pacheco v. Ford Motor Co.*, No. 2:22-cv-11927, 2025 WL 2255623, at \*3 (E.D. Mich. Aug. 7, 2025); *Henley v. Meyer*, No. 314-cv-1080, 2015 WL 224369, at \*2 (N.D. Tex. Jan. 16, 2015); *see Johnson v. Johnson*, 157 F.4th 813, 818 (6th Cir. 2025) ("[T]he federal courts have subject matter jurisdiction to compel arbitration under § 4 [of the FAA] only if they would have jurisdiction over the dispute purportedly subject to arbitration.").

A plaintiff lacks standing to sue if they have not suffered an injury-in-fact. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 334 (2016). Defendants argue that Hoxworth cannot establish an injury-in-fact in connection with his ERISA claims because his alleged injury—namely, a failure to transfer funds to his 401(k)—has already been addressed by a settlement in a previous lawsuit filed by the United States Department of Labor against SDI and Erard. (*See* Consent Order, ECF No. 10-4.) In response, Hoxworth contends that the settlement did not necessarily cover the entire scope of his claimed damages in this case, and that such a determination is a merits issue rather than a standing issue. The Court agrees that the existence of the settlement does not establish at this stage that Hoxworth's alleged injuries have been fully redressed. The record does not indicate that Hoxworth's claims are identical to the Department of Labor's claims, or that the settlement in that case involved a complete refund of the allegedly mishandled funds. Insofar as Defendants seek to prevent Hoxworth from obtaining a double recovery, that concern should be addressed at a later stage. Thus, the Court will deny Defendants' motion to dismiss under Rule 12(b)(1).

**B. Motion to Compel**

Moving to the motion to compel, Defendants argue that the Operating Agreement requires Hoxworth's claims to be arbitrated. As explained below, the Court finds that (1) the arbitration clause is operational because it is not overridden by the forum selection clauses in the Employment and Redemption Agreements; (2) Hoxworth's claims against JAE must be arbitrated, but his

6

argument that Erard and SDI cannot enforce the arbitration clause is for the Court to resolve; and

(3) Erard can enforce the arbitration clause under principles of agency law, but SDI cannot.

### 1. Forum Selection Clauses

The first issue is whether the forum selection provisions in the Employment and Redemption Agreements override the arbitration clause in the Operating Agreement. Hoxworth argues that both forum selection provisions—which provide respectively that "[v]enue shall be proper in any state or federal court in Kent County" (Redemption Agreement, PageID.54) and that "[v]enue shall be proper in Grand Rapids" (Employment Agreement 5)—indicate an intent to resolve disputes in court rather than through arbitration. Because the potential conflict between these provisions affects whether the arbitration clause is operational at all, that conflict must be resolved by the Court regardless of whether other issues of arbitrability have been delegated to the arbitrator. *See Coinbase, Inc. v. Suski*, 602 U.S. 143, 145 (2024).[1] The operation of the arbitration clause is a matter of contract interpretation, so the Court applies state law. *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 302 (6th Cir. 2008). The contracts at issue all provide that they are governed by Michigan law (*see* Operating Agreement 30; Redemption Agreement, PageID.54; Employment Agreement 5), and it appears that Michigan law would govern even without a choice-of-law clause, *see Uhl*, 512 F.3d at 302.

Beginning with the Redemption Agreement, Defendants argue that the "non-contravention" clause in that contract prevents its forum selection clause from overriding the Operating Agreement's arbitration clause. The non-contravention clause provides that

> the execution and delivery by Seller of this Agreement and Seller's compliance with this Agreement will not result in any violation of, or be in conflict with, or constitute a default under, any agreement to which Seller is a party to or under

---

[1] The justification for the *Coinbase* rule is that the Court cannot find that the parties delegated issues of arbitrability without first finding that the parties intended the delegation provision to be operational, and the operation of the delegation provision depends on the interaction between the multiple contracts at issue. *Coinbase*, 602 U.S. at 145.

7

which Seller is bound, or give to others any interest or rights, including rights of termination, cancellation or acceleration, with respect to any instruments, contracts or agreements to which Seller is a party to or under which Seller is bound, except for the provisions of the Operating Agreement, which have been waived as set forth above.

(Redemption Agreement, PageID.52–53.)   The Court agrees with Defendants that the non-contravention clause implies the Redemption Agreement was not meant to conflict with anything in the Operating Agreement, including its arbitration clause.[2]  Moreover, the three agreements were executed on the same day as part of the same transaction, and the Redemption Agreement explicitly refers to the Operating Agreement and the Employment Agreement.  (*See id.*, PageID.52, 53.) Because these agreements are interrelated, they should be construed as a harmonious whole if possible.  *See Lesniak v. Archon Builders, LLC*, No. 345228, 2019 WL 6977110, at \*4 (Mich. Ct. App. Dec. 19, 2019) ("When there are several agreements relating to the same subject matter, the intention of the parties must be gleaned from all the agreements." (quoting *Omnicom of Mich. v. Giannetti Inv. Co.*, 561 N.W.2d 138, 140 (Mich. Ct. App. 1997))); *Barnes v. State*, No. 197246, 1997 WL 33344232, at \*1 (Mich. Ct. App. Aug. 22, 1997) ("We construe contracts as a whole, giving harmonious effect, if possible, to each word and phrase." (internal quotation marks omitted)).  The interconnectedness of the contracts makes it implausible that one contract was intended to override the provisions of another.

It is true that the Employment Agreement, unlike the Redemption Agreement, does not contain a non-contravention clause.  But for the reason discussed above, the Court still declines to read the Employment Agreement's forum selection clause as overriding the arbitration clause. Moreover, the Employment Agreement's forum selection clause does not even refer to a court—

---

[2] The non-contravention provision contains an exception for the provisions of the Operating Agreement that were "waived as set forth above." (Redemption Agreement, PageID.52–53.)  But there is no indication that the arbitration clause was a provision whose waiver was "set forth above."

it just indicates that venue is proper in Grand Rapids.  Thus, it appears to merely specify the location in which arbitration should take place.

Hoxworth contends that interpreting the forum selection clauses as *not* superseding the arbitration clause would render them extraneous.  *See Beggs v. Freed*, No. 354797, 2022 WL 2285093, at *7 (Mich. Ct. App. June 23, 2022).  But this contention is incorrect.  The forum selection clauses still apply to any disputes regarding the Employment and Redemption Agreements, which the Operating Agreement's arbitration clause does not cover.  Additionally, as Defendants point out, the arbitration clause allows actions in court for an injunction or specific performance.  (*See* Operating Agreement 20, 30.)  Thus, the forum selection clauses specify the forum in which a party can seek those remedies.

Hoxworth also argues that the integration clauses contained in the Employment and Redemption Agreements override the Operating Agreement's arbitration clause.  The Employment Agreement's integration clause states that Hoxworth

> has no oral representations, understandings, or agreements with the Employer or any of its officers, directors, or representatives covering the same subject matter as this Agreement.  This Agreement supersedes all prior discussions and agreements between the parties with respect to the matters contained in it, and this Agreement contains the sole and entire understanding between the parties to it with respect to the transaction contemplated under it.  Other than those agreements stated, reference[d], or contemplated above, this is the complete agreement of the parties and supersedes any prior agreements, understandings, and representations.  No change, modification or amendment shall be effective unless made in a writing signed by all parties to this Agreement.

(Employment Agreement 5.)  However, this provision does not negate the effect of the Operating Agreement's arbitration clause.  The Employment Agreement references the fact that SDI issued a non-voting interest to Hoxworth (*id.* at 1), so the Operating Agreement was "stated, reference[d], or contemplated above," and thus falls outside the scope of the integration clause.  In addition, the Operating Agreement was "a writing signed by all parties to this Agreement," and thus the

9

integration clause does not impact it.  Finally, as discussed above, the interconnectedness of the three contracts weighs against an interpretation of the Employment Agreement as voiding the contemporaneously executed Operating Agreement.  *See Owen v. Bristol W. Preferred Ins. Co.,* No. 323036, 2016 WL 930727, at *2 (Mich. Ct. App. Mar. 10, 2016) ("[A] contract should not be interpreted so as to render it unreasonable.").

The Redemption Agreement contains a similar integration clause providing that "[t]his Agreement, including any attached exhibits, embodies the entire agreement and understanding of the parties with respect to the Company's redemption of Membership Interest of the Seller.  No change, modification, or amendment may be made by any party unless the same shall be in writing and signed by both parties."  (Redemption Agreement, PageID.54.)  Again, the Operating Agreement was "in writing and signed by both parties," and thus is not covered by the integration clause.  Moreover, the Redemption Agreement states that SDI "shall restate its Operating Agreement" (*id.*, PageID.51), so it would make little sense for the Redemption Agreement to also void the Operating Agreement.

In short, the Operating Agreement's arbitration clause governs this dispute because it is not superseded by anything in the Employment or Redemption Agreement.

### 2. Arbitrability

Hoxworth argues that even if the arbitration clause governs, his claims fall outside the scope of that clause because they are related to his status as an employee of SDI, not as a member. Defendants respond that issues regarding the scope of the arbitration clause and its applicability to specific claims must be resolved in arbitration.  As explained below, the Court finds that the parties here have delegated issues of arbitrability to the arbitrator, so most of Hoxworth's arguments cannot be addressed by the Court.  However, one issue Hoxworth raises is not properly for the

arbitrator: namely, whether Defendants can enforce an arbitration clause to which they were not a party.

A court should only find that the parties have delegated issues of arbitrability to the arbitrator if there is "'clear and unmistakable' evidence that the parties agreed to have an arbitrator decide such issues." *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844 (6th Cir. 2020).  Here, the Operating Agreement's arbitration clause specifies that the American Arbitration Association (AAA) Commercial Arbitration Rules apply.  These rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court."  R-7(a), *AAA 2026 Commercial Arbitration Rules*, https://www.adr.org/media/ueonklrv/2026_commercial-arbitration-rules-mediation-procedures.pdf [https://perma.cc/T9CU-LFJY].  Because of this language in the AAA rules, a reference to those rules in an arbitration clause constitutes clear and unmistakable evidence that the parties intended to arbitrate questions of arbitrability.  *Blanton*, 962 F.3d at 846.  Thus, here it is the arbitrator and not the Court that must decide whether this dispute falls within the scope of the Operating Agreement's arbitration clause.

Hoxworth argues that Defendants have waived their right to rely on the arbitration clause through their conduct.  But the issue of waiver falls within the set of "gateway" issues that the parties agreed to arbitrate when they selected the AAA rules set out above.  *See Hilton v. Midland Funding, LLC*, 687 F. App'x 515, 519 (6th Cir. 2017) (delegation of validity and enforceability issues to arbitrator includes waiver); *see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) ("[T]he presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability." (cleaned up)); *Debro v. French*, No. 15-14225, 2017 WL 927622,

at *4 (E.D. Mich. Feb. 16, 2017), *R&R adopted*, 2017 WL 914216 (E.D. Mich. Mar. 8, 2017); *Creason v. Experian Info. Sols., Inc.*, 722 F. Supp. 3d 760, 765 (W.D. Ky. 2024).

Hoxworth also argues that even if the arbitration clause delegates issues of arbitrability, some Defendants were not parties to the contract and have no right to enforce its delegation clause. A party may challenge enforcement of an arbitration agreement on the same grounds that they could challenge enforcement of any other contract. *Stevens-Bratton v. TruGreen, Inc*, 675 F. App'x 563, 567 (6th Cir. 2017); 9 U.S.C. § 2. Hoxworth's third-party enforcement argument is one that could be raised against any contract. But arbitration clauses are generally severable from the contracts in which they appear. *Rent-A-Ctr.*, 561 U.S. at 70–71. This principle entails that a challenge to "the contract as a whole" or to some portion of the contract *other* than the arbitration clause does not invalidate the arbitration clause—so such a challenge must be raised before the arbitrator, not the Court. *Id.* at 70. If a party wishes to challenge an arbitration clause on enforceability or validity grounds, they must "specifically" challenge "the validity of the agreement to arbitrate." *Id.*

This rule seems simple enough, but it is not always obvious whether a given challenge is specifically directed to the arbitration clause. Some examples clearly fit within one category or the other. If a party challenges a contract on some basis that has no bearing on the arbitration clause, that clause will remain valid and the broader issue of validity must be arbitrated. Thus, if an employee argues that their employment contract containing an arbitration clause is unconscionable because their wages are too low, they have not challenged the validity of the arbitration clause itself, so their unconscionability argument would be for the arbitrator to address. *See id.* at 71. On the other hand, if the employee argues that some feature of the arbitration

procedure makes the arbitration *itself* unconscionable, then the Court must resolve the unconscionability issue before it can send the case to arbitration. *Id.* at 74.

The more difficult question is how to treat a challenge that applies both to the contract as a whole and, for the same reason, to the arbitration clause itself. Answering this question requires tracing the development of the relevant doctrine. In *Prima Paint Corp. v. Flood and Conklin Manufacturing Co.*, the plaintiff challenged the application of an arbitration clause on the basis that it had been fraudulently induced to sign the contract by the defendant's false representations "that it was solvent and able to perform its contractual obligations." 388 U.S. 395, 398 (1967). The defendant sought to compel arbitration of the fraud claim. *Id.* at 402. The Supreme Court read the FAA as requiring that courts compel arbitration of any fraud claim that does not specifically implicate "the making of the agreement for arbitration." *Id*. at 403 (quoting 9 U.S.C. § 4). Thus, "if the claim is fraud in the inducement of the arbitration clause itself . . . the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Id.* at 404–05. In other words, because the arbitration clause is severable from the rest of the contract, any challenge to the broader contract does not undermine the arbitration clause—and thus should be addressed by the arbitrator, not the court. This is true despite the fact that "the alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part of that contract." *Rent-A-Ctr.*, 561 U.S. at 71 (discussing *Prima Paint*). Even in that situation, the Court explained, "we nonetheless require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene." *Id.*

The Supreme Court subsequently applied *Prima Paint* in *Rent-A-Center*, where the plaintiff challenged an arbitration clause as unconscionable due to the specific arbitration

13

procedures it prescribed.  561 U.S. at 72–73.  The arbitration clause contained a delegation clause

providing that the arbitrator should decide issues of arbitrability.  The Supreme Court held that

*Prima Paint*'s severability principle applies even *within* an arbitration clause.  Thus, because the

plaintiff challenged the arbitration clause as a whole but not the delegation provision within it, the

delegation provision remained intact and required the parties to arbitrate their dispute about the

enforceability of the arbitration clause.[3]  *Id.*

In *Swiger v. Rosette*, the Sixth Circuit took these Supreme Court cases to mean that "[o]nly

a specific challenge to a[n arbitration] clause brings arbitrability issues back within the court's

province."  989 F.3d 501, 505 (6th Cir. 2021).  However, it recognized in dicta that "[a] party may

attack a[n arbitration] clause using the same arguments it raises against the entire . . . agreement."

*Id.* at 506.  The holding of the case was that the plaintiff's unconscionability challenge to the

arbitration clause was not specifically directed at the delegation provision of that clause—indeed,

the plaintiff did not even mention the delegation clause in her argument—so her challenge to the

arbitration clause must be decided by the arbitrator.  *Id.*

In a subsequent case decided the same year, the Sixth Circuit clarified the scope of *Swiger*.

It explained,

> While this court has said in dicta that "[a] party may attack a delegation clause
> using the same arguments it raises against the entire arbitration agreement," *Swiger*,
> 989 F.3d at 506, that statement—in keeping with what *Rent-A-Center* teaches—
> must be understood to mean that a party may challenge both the entire agreement
> and a delegation provision under the same *legal doctrine*.  But a party's mere
> statement that it is challenging the delegation provision is not enough; courts must
> look to the substance of the challenge.

---

[3] In fact, the contract at issue was simply an arbitration contract, so a challenge to the arbitration clause *was* a challenge
to the contract as a whole.  But the same principle applies regardless of whether the arbitration clause is contained
within a larger contract.

*In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 885 (6th Cir. 2021).  In that case, the plaintiffs raised an infancy defense that "affect[ed] the validity or enforceability of 'the whole contract,' as well as the agreement to arbitrate and its delegation provision, which [we]re 'part of that contract.'"  *Id.* at 885–86 (quoting *Rent-A-Ctr.*, 561 U.S. at 71).  The court held that the infancy defense was not a *specific* challenge to the arbitration clause because the plaintiffs, in challenging the arbitration clause, "simply recycled the same arguments that pertain to the enforceability of the agreement as a whole."  *Id.* at 886.  While a challenge to the entire agreement and to the arbitration clause may be based on the same legal principle, that principle must "operate[] on the delegation provision . . . differently than it operates on other provisions of the" agreement.  *Id.*

The Sixth Circuit addressed this issue once more in *Becker v. Delek US Energy, Inc.*, which concerned whether a non-party to a contract could enforce the delegation provision of the contract's arbitration clause.  39 F.4th 351, 356 (6th Cir. 2022).  The court held that the plaintiff's challenge was not specifically directed to the delegation clause because "a party's challenge to a delegation clause must rest, in part, on different factual or legal grounds than the ones supporting its challenge to the arbitration agreement as a whole."  *Id.*  As it explained,

> Becker relies on a single circumstance, that Delek is a non-signatory to the employment agreement, to challenge the enforceability of both the arbitration agreement and the delegation provision.  The challenges are therefore identical in "substance."  *In re StockX*, 19 F.4th at 885.  Indeed, Becker does not even separate his analysis of the enforceability of the delegation provision from his analysis of the enforceability of the arbitration agreement as a whole.

*Becker*, 39 F.4th at 356.

To summarize: *Prima Paint* and *Rent-A-Center* provide that an arbitrator resolves challenges to the validity or enforceability of a contract containing an arbitration clause unless the challenge specifically attacks the arbitration clause.  In *Becker*, the Sixth Circuit held that a party has *not* specifically attacked the arbitration clause if they raise the same challenge to the arbitration

15

clause and the contract as a whole.  The court also applied that rule to the issue of non-party enforcement, holding that a plaintiff who argues that a defendant may not enforce an arbitration clause because they were not a party to the contract—and thus not a party to that clause—has merely "recycled" the same argument against both the contract and the arbitration clause, so the argument must be addressed to the arbitrator.  Because Hoxworth's challenge is identical to that in *Becker*—namely, that some Defendants were not parties to the Operating Agreement—the Court must compel arbitration as long as *Becker* controls.[4]

But *Becker* is not the end of the story, because in 2024 the Supreme Court decided *Coinbase*, a case that appears to undermine *Becker*'s reasoning.  The issue in *Coinbase* was one of contract formation—namely, whether subsequent contracts had overridden the arbitration clause in an earlier contract.  The defendant, who sought to enforce the arbitration clause, argued that the severability principle outlined in *Rent-A-Center* entailed that the court could address only arguments specific to the arbitration agreement's delegation provision.  *Coinbase*, 602 U.S. at 150.  The Court rejected the argument, explaining that the severability principle "does not require that a party challenge only the arbitration or delegation provision" instead of the whole contract.  *Id.* at 151.  "Rather, where a challenge applies 'equally' to the whole contract and to an arbitration or delegation provision, a court must address that challenge."  *Id.* (quoting *Rent-A-Ctr.*, 561 U.S. at 71).[5]  Thus, even though the plaintiff's argument that the arbitration provision had been overruled

---

[4] Note that *Prima Paint* and *Rent-A-Center* only apply when a plaintiff challenges the *validity* or *enforceability* of an arbitration clause.  If a plaintiff instead raises a *formation* challenge—i.e., argues that they did not form an agreement to arbitrate at all—the issue is one for the court and not the arbitrator.  *Becker*, 39 F.4th at 355.  But *Becker* held that a challenge to non-party enforcement of an arbitration clause is not a formation issue—even though it goes to whether an agreement between the plaintiff and defendant existed—because the plaintiff does not dispute that they did form *some* arbitration agreement.  *See id.* at 356.

[5] The Supreme Court's citation to *Rent-A-Center* here seems inapposite.  In the cited passage, the *Rent-A-Center* Court stated that even when a challenge applies "equally" to the broader agreement and the arbitration agreement—"as in *Prima Paint* itself, where the alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part of that contract—we nonetheless require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene."  561 U.S. at 71.  Thus, *Rent-A-Center* suggests that a challenge

16

by a subsequent contract applied both to the arbitration clause and the delegation provision, it still qualified as a specific challenge to the delegation provision.[6]

It is difficult to square the Sixth Circuit's holding in *Becker* and its predecessors—namely, that a party may not "recycle" its arguments regarding the contract as a whole in its arguments against an arbitration or delegation provision—with the Supreme Court's holding in *Coinbase* that a party may raise a challenge that applies "equally" to the contract as a whole and the arbitration or delegation provision.[7]   In a recent case, the Eastern District of Michigan declined to apply *Becker* and held that *Coinbase* requires courts to address issues of non-party enforcement of a delegation clause.  *Frisch v. FCA US, LLC*, No. 24-cv-10546, 2026 WL 1831998, at *6 (E.D. Mich. June 25, 2026).  There, the court distinguished *Swiger* and *Becker* on the basis that "[i]n both cases, the Sixth Circuit emphasized deficiencies in the plaintiffs' challenges to the delegation provisions themselves."  *Id.*  It noted that "unlike the plaintiffs in *Swiger* and *Becker*, Plaintiffs here directly challenge FCA's ability, as a non-signatory, to invoke the delegation provisions in the first instance."  *Id.*; *see also Olson v. FCA US, LLC*, 176 F.4th 612, 620 n.2 (9th Cir. 2026) (characterizing *Becker* as a case involving "waiver or forfeiture doctrines" and noting that "the plaintiff [in *Becker*] failed to challenge the enforcement of the delegation clause with enough

---

applying equally to the contract and the arbitration clause must be arbitrated unless the challenge *specifically* applies to the arbitration clause; *Coinbase* suggests that such a challenge applying equally to the contract and the arbitration clause must instead be addressed by the court.

[6] Because *Coinbase* involved a formation issue, it was technically unnecessary to address the severability principle, which only applies to enforcement or validity issues.  But the Supreme Court "[a]ssum[ed] without deciding that the severability principle [was] implicated."  *Coinbase*, 602 U.S. at 150.

[7] In *Taylor v. Sunrun Inc.*, a district court put the following gloss on *Coinbase*: "[W]hile a court must consider challenges that apply 'equally' to an arbitration provision and a whole contract, it need do so only when the alleged defect originates in the arbitration provision and infects the rest of the agreement, not the other way around."  No. CV JKB-25-1381, 2025 WL 2402760, at *6 (D. Md. Aug. 19, 2025).  This reading is consistent with *Becker*, but it is not supported by *Coinbase*.  The challenge there did not originate in the delegation clause and affect the rest of the arbitration agreement; rather, it applied equally to the arbitration agreement and the delegation clause, just as Hoxworth's argument does.

specificity"). This Court is not convinced that *Becker*'s holding is so narrow—the court there explicitly assumed that the plaintiff's arguments qualified as a "challenge to [the] delegation provision," but still held that such a challenge was "not specific enough to enforce judicial review" because it "recycle[d] the same arguments that pertain to the enforceability of the agreement as a whole." 39 F.4th at 356. Nonetheless, the Court agrees with *Frisch* that *Coinbase* requires a court, not an arbitrator, to decide issues of non-party enforcement. Thus, it is forced to conclude that *Coinbase* has implicitly overruled *Becker*. *See United States v. Prather*, 138 F.4th 963, 974 (6th Cir. 2025) ("[C]ircuit precedent is no longer binding if intervening Supreme Court precedent mandates modification of it[.]" (cleaned up)); *United States ex rel. Bryant v. Cmty. Health Sys., Inc.*, 24 F.4th 1024, 1036 (6th Cir. 2022) (intervening Supreme Court precedent "need not be precisely on point, if the legal reasoning is directly applicable").

It is also worth noting that *Coinbase*'s holding accords with the underlying principles governing enforcement of arbitration clauses. The Supreme Court has been clear that the principle underlying its arbitration jurisprudence is respect for the intent of the parties. "Arbitration is a matter of contract and consent, and [the Supreme Court has] long held that disputes are subject to arbitration if, and only if, the parties actually agreed to arbitrate those disputes." *Coinbase*, 602 U.S. at 145. It makes sense, then, that a party must specifically challenge an arbitration provision in order to avoid arbitration. If a party argues that some other feature of the contract renders it invalid, but does not dispute that they freely consented to arbitration, their argument can be addressed by an arbitrator. On the other hand, if a party argues that they never consented to arbitration, their argument should be addressed by the court.

This principle entails that a party should be free to challenge an arbitration clause (or delegation provision) on the same basis as they challenge the entire contract, as long as the

18

challenge applies equally to the arbitration clause—that is, as long as the argument *challenges their consent to arbitration*.  Here, Hoxworth's argument that non-party Defendants cannot enforce the contract at all—and therefore cannot enforce the arbitration clause, or its delegation provision—implies that he never consented to arbitrate *anything* with the non-parties.  So it would violate "basic principles of contract and consent" to force him to arbitrate the question of whether he ever agreed to arbitrate with these parties in the first place.  *Coinbase*, 602 U.S. at 151.

As the Ninth Circuit has recognized, "[c]oncluding otherwise would lead to absurd results." *Olson*, 176 F.4th at 619.  If a non-party's ability to enforce an arbitration clause or delegation provision is always a question for the arbitrator, then "delegation clauses could be enforced even by third parties who have no connection whatsoever to the underlying arbitration agreement."  *Id.* If a plaintiff has ever signed an arbitration agreement in their life, any person they sue could raise that arbitration agreement as a defense and compel arbitration on the question of whether they are allowed to enforce an arbitration agreement to which they are not a party.  *Id.*  It cannot be the case that plaintiffs must "arbitrate the arbitrability of their claims against a theoretically limitless universe of defendants with whom they have never agreed to arbitrate"; such a result "would undermine the 'fundamental principle that arbitration is a matter of contract,' and the 'first principle' that 'arbitration is strictly a matter of consent.'"  *Id.* (cleaned up) (first quoting *Rent-A-Ctr.*, 561 U.S. at 67, and then quoting *Coinbase*, 602 U.S. at 148).

To recap: *Becker*'s holding that issues of non-party enforcement must be addressed by the arbitrator has been overruled by *Coinbase*.  Because Hoxworth's challenge to non-party enforcement applies equally to the delegation provision, the arbitration clause, and the contract as a whole, it must be addressed by this Court.

However, Hoxworth's non-party enforcement argument does not apply to JAE, which was a party to the Operating Agreement. (*See* Operating Agreement, PageID.164.) The only remaining argument Hoxworth raises against JAE's enforcement of the arbitration clause is that it breached other provisions of the Operating Agreement, and thus has lost the ability to enforce it. *See, e.g., Caro Trans Opportunities LLC v. Mobile Med. Response, Inc.*, No. 337074, 2018 WL 2990796, at *3 (Mich. Ct. App. June 14, 2018) (substantial breach of a contract can be basis for non-enforcement). But a challenge to enforceability based on the other party's breach of non-arbitration-related provisions is not specific to the arbitration provision. Rather, it is similar to a challenge to enforceability based on an unconscionable wage provision in an employment contract. *See Rent-A-Ctr.,* 561 U.S. at 71. In neither case has the plaintiff disputed the validity of their consent to arbitrate, so the issue must be addressed through arbitration.

Putting everything together, the Court will grant the motion to compel as to the claims against JAE. But SDI and Erard's ability to enforce the Operating Agreement is an issue that must be resolved by the Court, not the arbitrator, and is addressed below.

### 3. Non-Party Enforcement

Hoxworth argues that non-signatories to a contract may not enforce it absent special considerations not present here. The Court applies the relevant state's contract law to determine who may enforce an arbitration clause. *AtriCure, Inc. v. Meng*, 12 F.4th 516, 520 (6th Cir. 2021). The arbitration clause appears in the Operating Agreement, which was between the members of SDI—that is, JAE, Hoxworth, and Gauthier. (Operating Agreement, PageID.164–166.) SDI itself

20

and Jeremy Erard—the owner of JAE—were not parties.  Thus, the Court must determine whether SDI and Erard may enforce the Operating Agreement.[8]

It is worth noting that while SDI and Erard are not parties to the Operating Agreement, they are parties to related contracts with Hoxworth—SDI is a party to the Employment Agreement, and Erard is a party to the Redemption Agreement.  If one reads these two contracts as incorporating the arbitration clause in the Operating Agreement, then there would be no third-party enforcement issue because SDI and Erard would be parties to the arbitration clause.  But that reading of the contracts is unpersuasive.  The Employment and Redemption Agreements do not indicate that they incorporate the arbitration clause, and it would be odd for a contract with one party to implicitly incorporate a provision from a contract with a different party.  Thus, SDI and Erard can only rely on the Operating Agreement's arbitration clause if there is some basis for third-party enforcement.

Under Michigan law, a non-party to a contract may enforce it if they are a third-party beneficiary.  *Brunsell v. City of Zeeland*, 651 N.W.2d 388, 390 (Mich. 2002).  A third-party beneficiary is someone whom the parties to the contract intended to directly benefit.  *Id.*  The Operating Agreement contains the following provision:

> 14.10 **No Third Party Beneficiaries**. Nothing contained in this Agreement shall create or be deemed to create any rights or benefits in any third parties.

(Operating Agreement 31.)  Accordingly, neither SDI nor Erard are third-party beneficiaries of the Operating Agreement.

Defendants next argue that SDI and Erard can invoke the arbitration clause based on an agency theory.  Non-parties to a contract may be able to enforce its arbitration clause based on

---

[8] Hoxworth contends that JAE and Erard may not enforce the Operating Agreement—apparently on the mistaken belief that SDI, but not JAE, was a party to the agreement.  The Court reframes his argument as directed at SDI and Erard, who were not parties to the Operating Agreement.

general principles of agency law.  *See Altobelli v. Hartmann*, 884 N.W.2d 537, 545 (Mich. 2016).

In *Altobelli*, the Michigan Supreme Court held that a clause requiring arbitration between

employees and a law firm extended to claims by employees against executives of the firm.  *Id.* at

545–48.  As the Court explained, "[b]ecause it is axiomatic that the Firm cannot act on its own,

and because these particular defendants are clearly endowed with agency authority to administer

the Firm's affairs, the individually named defendants must be included within the meaning of 'the

Firm' in the arbitration clause."  *Id.* at 546 (internal citations omitted).  Thus, the executives could

compel arbitration of claims based on actions taken "within the scope of their employment."  *Id.*

at 543; *see id.* at 545 n.9, 548.

Erard is an agent of JAE, and signed the Operating Agreement on its behalf.  Thus, Erard

may rely on JAE's arbitration clause.  It is unnecessary to decide whether Hoxworth's claims

against Erard involve actions he took as an agent of JAE because the determination of which

specific claims against Erard fall within the scope of the arbitration clause has been delegated to

the arbitrator, and is not for the Court to decide.  In other words, because Hoxworth agreed to

arbitrate *some* claims against Erard—and because the arbitration clause contains an implicit

delegation provision—Hoxworth necessarily agreed to allow an arbitrator to determine which

claims against Erard may be arbitrated.  SDI, on the other hand, is not an agent of JAE, so principles

of agency law do not allow it to enforce the arbitration clause.

In sum, Hoxworth's claims against Erard are subject to the Operating Agreement's

arbitration clause, but his claims against SDI are not.

### C. Failure to State a Claim

Finally, Defendants argue that Hoxworth has failed to state a claim for retaliation under

ERISA.  ERISA prohibits an employer from taking an adverse action against a plan participant

"because [the] participant availed [him]self of an ERISA right."  *Hamilton v. Starcom Mediavest*

22

*Grp., Inc.*, 522 F.3d 623, 628 (6th Cir. 2008).  Hoxworth alleges that he sent SDI a letter on February 10, 2026, accusing it of ERISA violations and stating that he was terminating his employment effective April 11, 2026.  (Compl. ¶ 45.)   SDI placed Hoxworth on administrative leave the next day, and terminated his employment a week later.  (*Id*. ¶¶ 46, 48.)  Defendants contend that Hoxworth's termination was not an adverse action because he had already resigned.  But SDI's decision to terminate Hoxworth two months before his planned resignation date constituted an adverse action, as it deprived him of two months of employment.  *See, e.g.*, *Valles v. Frazier*, No. CIVA SA-08-CA-501-XR, 2009 WL 3617534, at *3 (W.D. Tex. Oct. 27, 2009); *EEOC v. Chipotle Servs., LLC*, No. CV 23-2439, 2024 WL 4948888, at *12–13 (D. Kan. Dec. 3, 2024).

Defendants also argue that Hoxworth has failed to plead facts supporting an inference that SDI terminated him because of his ERISA complaint.  Hoxworth primarily relies on the temporal proximity between his ERISA complaint and his termination to establish causation.  "While evidence of temporal proximity alone is ordinarily not sufficient to support an inference of causation, there may be circumstances where evidence of temporal proximity alone would be sufficient to support such an inference." *Hicks v. SSP Am., Inc.*, 490 F. App'x 781, 786 (6th Cir. 2012) (cleaned up).   Specifically, temporal proximity is sufficient "[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008).  The justification for this rule is that "if an employer immediately retaliates against an employee upon learning of his protected activity, the employee would be unable to couple temporal proximity with any such other evidence of retaliation because the two actions happened consecutively, and little other than the protected activity could motivate the retaliation." *Id.*

23

Applying this principle, Hoxworth has alleged sufficient facts to support an inference that his protected activity caused SDI to terminate him. The short gap in time between the letter and his administrative leave—which then turned into his termination—strongly suggests that the letter was the cause of his termination. It is true that *other* aspects of the letter may have instead caused Hoxworth's termination—for instance, perhaps SDI did not want him to continue working after he had resigned. But the existence of other plausible explanations for a defendant's conduct does not warrant dismissal at the pleading stage. *See 16630 Southfield LP v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 505 (6th Cir. 2013) ("[T]he mere existence of more likely alternative explanations [for the adverse action] does not automatically entitle a defendant to dismissal."); *see also DeVooght v. City of Warren*, No. 20-cv-13168, 2023 WL 2637369, at *7 (E.D. Mich. Mar. 24, 2023) ("There may be multiple 'but-for' causes of the materially adverse action, and the protected activity must be a cause but need not be the sole ca[u]se."). Moreover, the circumstances of Hoxworth's termination strengthen the inference that SDI had a retaliatory motive. Hoxworth alleges that in its termination letter, SDI purported to terminate Hoxworth for cause based on performance issues that it had never raised before. (Compl. ¶ 49.) The fact that SDI's explanation for terminating Hoxworth does not seem credible strengthens the inference that its true motive was retaliatory. *Cf. Dunlap v. Tenn. Valley Auth.*, 519 F.3d 626, 630 (6th Cir. 2008) ("Proof of discriminatory motive may also be inferred from the falsity of the employer's explanation for the treatment.").

In sum, Hoxworth has sufficiently alleged an ERISA retaliation claim, and the Court will deny the motion to dismiss.

### D. Stay Pending Arbitration

The Court will stay all claims against JAE and Erard pending arbitration of those claims. *See* 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 473 (2024). But it also must determine what to do with the non-arbitrable claims. Although "[t]he Federal Arbitration Act allows piecemeal,

24

concurrent litigation where only some of the relevant issues are arbitrable," *Thomas v. Right Choice Staffing Grp., LLC*, No. CIV. 15-10055, 2015 WL 4078173, at *8 (E.D. Mich. July 6, 2015), the Court possesses discretion "to stay litigation among the non-arbitrating parties pending the outcome of the arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 n.23 (1983); *see Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).  Courts often stay non-arbitrable claims under the following circumstances:

> where a decision in one forum could affect the resolutions of claims in another; where the non-arbitrable claims depend on the same facts and are inherently inseparable from the arbitrable claims; or where the arbitration may resolve issues in the lawsuit and/or promote the federal policy in favor of arbitration.

*Concrete Jungle, LLC v. ICON Com. Lending, Inc.*, No. 16-14114, 2017 WL 4535916, at *13 (E.D. Mich. Oct. 11, 2017).

Here, Hoxworth's claims against SDI are based on the same conduct as his claims against JAE and Erard.  For example, Hoxworth alleges that SDI, JAE, and Erard violated ERISA by terminating him.  Thus, the claims are inherently inseparable, and the Court will stay the claims against SDI until arbitration is complete.

## IV. CONCLUSION

For the reasons set out above, the Court will grant the motion to compel arbitration in part, compel arbitration regarding Hoxworth's claims against JAE and Erard, and stay all claims pending arbitration.  The Court will also deny the motions to dismiss for failure to state a claim and for lack of subject matter jurisdiction.

An order will enter in accordance with this Opinion.


Dated: August 7, 2026                              /s/ Hala Y. Jarbou
                                                   HALA Y. JARBOU
                                                   CHIEF UNITED STATES DISTRICT JUDGE